**\*\*\* FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCAP-23-0000063
04-JUN-2024
08:43 AM
Dkt. 41 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Plaintiff-Appellant/Cross-Appellee,

vs.

ALVIN TRAN,
Defendant-Appellee/Cross-Appellant.

SCAP-23-0000063

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CAAP-23-0000063; CASE NO. 1CPC-20-0000890)

JUNE 4, 2024

RECKTENWALD, C.J., McKENNA, AND EDDINS, JJ.,
AND CIRCUIT JUDGE MALINAO, ASSIGNED BY REASON OF VACANCY[1]

OPINION OF THE COURT BY RECKTENWALD, C.J.

This case centers on whether the statute regarding continuous sexual assault of a minor under the age of fourteen years, Hawaiʻi Revised Statutes (HRS) § 707-733.6 (2014), and a

---

[1] Circuit Judge Jeffrey P. Crabtree, who was a member of the Court, assigned by reason of vacancy, retired from the bench on January 31, 2024.

related provision of the Hawai'i Constitution, article I, section 25, comport with the U.S. Constitution.  For the reasons stated below, we conclude that they do.  We further conclude that the indictment against defendant Alvin Tran, charging a violation of HRS § 707-733.6, was sufficiently specific when construed under the liberal construction standard announced in State v. Motta, 66 Haw. 89, 657 P.2d 1019 (1983), and modified by State v. Wells, 78 Hawai'i 373, 894 P.2d 70 (1995).

Accordingly, we (1) vacate the circuit court's order granting in part and denying in part Tran's motion to dismiss; (2) affirm the circuit court's denial of Tran's supplemented new trial motion; and (3) remand the case to the circuit court for further proceedings.

## I.    BACKGROUND

In July 2020, a grand jury returned a single-count indictment against Tran as follows:

> On or about January 1, 2015 to and including January 31, 2020, in the City and County of Honolulu, State of Hawai'i, ALVIN TRAN, a person who either resided in the same home with [minor child], a minor under the age of fourteen years, or had recurring access to [minor child], with intent or knowledge that [minor child] was such a person, did intentionally or knowingly engage in three or more acts of sexual penetration and/or sexual contact with [minor child] over a period of time, while [minor child] was under the age of fourteen years, and was not married to [minor child], and knew he was not married to [minor child], thereby committing the offense of Continuous Sexual Assault

of a Minor Under the Age of Fourteen Years, in violation of Section 707-733.6 of the [HRS].[2]

Pursuant to Section 707-700 of the [HRS (2014)], "married" includes persons legally married, and a male and female living together as husband and wife, but does not include spouses living apart.

Pursuant to Section 707-700 of the [HRS], "sexual penetration" means:

> (1)     Vaginal intercourse, anal intercourse, fellatio, deviate sexual intercourse, or any intrusion of any part of a person's body or of any object into the genital or anal opening of another person's body; it occurs upon any penetration, however slight, but emission is not required.  As used in this definition,

---

[2]     HRS § 707-733.6 (2014) states:

(1) A person commits the offense of continuous sexual assault of a minor under the age of fourteen years if the person:

> (a) Either resides in the same home with a minor under the age of fourteen years or has recurring access to the minor; and

> (b) Engages in three or more acts of sexual penetration or sexual contact with the minor over a period of time, while the minor is under the age of fourteen years.

(2) To convict under this section, the trier of fact, if a jury, need unanimously agree only that the requisite number of acts have occurred; the jury need not agree on which acts constitute the requisite number.

(3) No other felony sex offense involving the same victim may be charged in the same proceeding with a charge under this section, unless the other charged offense occurred outside the period of the offense charged under this section, or the other offense is charged in the alternative. A defendant may be charged with only one count under this section, unless more than one victim is involved, in which case a separate count may be charged for each victim.

(4) Continuous sexual assault of a minor under the age of fourteen years is a class A felony.

(Emphasis added.)

3

"genital opening" includes the anterior surface of the vulva or labia majora; or

(2) Cunnilingus or anilingus, whether or not actual penetration has occurred.

Pursuant to Section 707-700 of the [HRS], "deviate sexual intercourse" means any act of sexual gratification between a person and an animal or a corpse, involving the sex organs of one and the mouth, anus or sex organs of the other.

Pursuant to Section 707-700 of the [HRS], "sexual contact" means any touching, other than acts of "sexual penetration", of the sexual or other intimate parts of a person not married to the actor, or of the sexual or other intimate parts of the actor by the person, whether directly or through the clothing or other material intended to cover the sexual or other intimate parts.

During trial in April 2022, the State presented testimony from (1) minor child, (2) minor child's mother, (3) minor child's father, (4) a pediatrician who interviewed minor child, (5) a clinical psychologist, (6) a Honolulu Police Department (HPD) evidence specialist, (7) a homeland security special agent, and (8) an HPD detective with the sex crimes detail. Tran presented testimony from (1) a sex assault nurse examiner, (2) Tran's brother, and (3) Tran's sister, but did not testify himself.

Minor child testified at trial that Tran was her father's best friend and that she had known Tran "[s]ince I was born." According to minor child, Tran lived with her father at times, and she would see Tran at her father's house when she was staying with her father. Minor child testified further that from ages eight to twelve, Tran, among other things, "rub[bed]

4

my lower private areas," "touch[ed] my breasts" with "[h]is hand and his mouth," "put his lips on my lips and . . . swirl[ed] his tongue in my mouth," and "suck[ed] . . . and lick[ed] . . . and touch[ed] . . . with his hand" minor child's lower private area.

Tran argued in closing, among other things, that an inexperienced detective had "rush[ed] to judgment" and was "not focused on a fair investigation." He also contended that minor child was "not credible," was "seeking out attention," and came from "a broken home."

At the close of the evidence, the circuit court[3] instructed the jury on continuous sexual assault of a minor under the age of fourteen, under HRS § 707-733.6. The circuit court stated the offense's material elements: (1) "[t]hat, on or about January 1, 2015, to and including January 31, 2020, in the City and County of Honolulu, State of Hawai'i, the defendant, [Tran], intentionally or knowingly engaged in three or more acts of sexual penetration or sexual contact with [minor child]"; (2) "[t]hat [Tran] intentionally or knowingly resided in the same house with [minor child] or had recurring access to [minor child] at that time"; (3) "[t]hat [Tran] knew he was not married to [minor child] at that time"; and (4) "[t]hat [minor child] was less than fourteen years old at that time."

---

[3]     The Honorable Catherine H. Remigio presided.

The circuit court then instructed the jury that, "[a]s to Element No. 1, you need to unanimously agree only that the requisite number of acts have occurred; you need not agree on which acts constitute the requisite number." This instruction tracked HRS § 707-733.6(2)'s language, which states that "the trier of fact, if a jury, need unanimously agree only that the requisite number of acts have occurred; the jury need not agree on which acts constitute the requisite number."

Finally, the circuit court provided the statutory definitions of "sexual penetration," "sexual contact," "deviate sexual intercourse," and "married." See HRS § 707-700.

All members of the jury agreed to a guilty verdict. The circuit court asked the jury foreperson, "has the jury reached a unanimous verdict in this case?" The foreperson replied "Yes, ma'am." At Tran's request, the circuit court polled the jury, noting that "the purpose of a jury poll is to ensure that the verdict just announced is unanimous and represents the true verdict of the jury." The circuit court then instructed the jurors to "answer yes if you agree with the verdict, answer no if you do not agree with the verdict." Each juror, when asked individually, answered "Yes." The circuit court concluded that "[t]he verdict is unanimous. And consistent with the jury's verdict, which has been received, . . . the [c]ourt adjudges Mr. Tran guilty of the

offense of Continuous Sexual Assault of a Minor Under the Age of Fourteen Years."

In May 2022, after the verdict but before sentencing, Tran moved for a new trial, alleging several errors, including improperly excluded evidence and prosecutorial misconduct. Later that month, the circuit court allowed Tran to supplement his new trial motion over the State's opposition.

Specifically, Tran added an argument to his new trial motion based on the U.S. Supreme Court's decision in Ramos v. Louisiana, which held that the Sixth Amendment to the U.S. Constitution requires verdicts from unanimous juries to support convictions. See 140 S. Ct. 1390, 1397 (2020). Tran argued that "the federal constitution, by way of its Sixth and Fourteenth Amendments, does not allow a state to alter the verdict unanimity that the Sixth Amendment's jury trial clause requires to convict on a criminal offense."

Tran argued first that article I, section 25(2) of the Hawai'i Constitution, providing that, "[i]n continuous sexual assault crimes against minors younger than fourteen years of age, the legislature may define . . . [w]hat constitutes the jury unanimity that is required for a conviction," is unconstitutional under the Sixth and Fourteenth Amendments to the U.S. Constitution. Second, without the benefit of this constitutional provision, HRS § 707-733.6 is unconstitutional

7

under the Hawai'i Constitution and the Fourteenth Amendment to the U.S. Constitution.  Third, without HRS § 707-733.6, Hawai'i law requires unanimous jury agreement on each of the three acts required by HRS § 707-733.6(1)(b) (2014).  Fourth, the circuit court's jury instruction on HRS § 707-733.6(2) (2014)'s unanimity rule, requiring jury unanimity only as to whether <u>a minimum of three</u> acts occurred and not requiring unanimity as to <u>which three</u> acts occurred, permitted the jury to convict Tran on an invalid and unconstitutional legal theory.  Fifth, the jury's guilty verdict must be vacated because it might rest upon the aforementioned theory.  Finally, Tran argued he was entitled to a new trial where the jury would be instructed that all jurors must agree on at least three specific acts to return a guilty verdict under HRS § 707-733.6.

In April 2022, one week after Tran was convicted, we issued our decision in <u>State v. Jardine</u>, which clarified the specificity required in criminal charges.  151 Hawai'i 96, 508 P.3d 1182 (2022).  Specifically, we held that, because "'substantial bodily injury' is a generic term for which the State must include the statutory definition by stating the species of injury allegedly inflicted, and/or a 'to wit' clause specifying the alleged injury," the "felony information against [the defendant] was insufficient because it did not state the species of [the victim's] substantial bodily injuries or descend

8

to the particulars of [the victim's] injuries." Id. at 99, 102, 508 P.3d at 1185, 1188.

In May 2022, Tran moved to dismiss based on Jardine, arguing that the July 2020 indictment "did not provide the details that Jardine requires, beyond identifying who [Tran] was accused of sexually assaulting." "Instead," Tran argued, the "indictment used [HRS § 707-]733.6(1)'s generic language to accuse Tran of violating the statute and set forth the full statutory definitions of the terms" used in the relevant statutes. The indictment should have stated which of the "various forms of sexual intercourse, intrusions, and lingus" included in the definition of "sexual penetration" and which specific kinds of touching or other contact included in the definition of "sexual contact" Tran allegedly committed. The indictment, in Tran's view, should therefore have been dismissed with prejudice because the State's interest in prosecuting HRS § 707-733.6 cases "is outweighed by the constellation of constitutional and statutory rights that the State's prosecution of Tran, on a defective [HRS § 707-]733.6 indictment, has violated." Tran argued that the error was "structural and systemic," and that "doing anything less [than dismissing with prejudice] will compound and perpetuate that systemic structural error."

The State opposed Tran's motions.

9

The circuit court denied the new trial motion and continued sentencing, concluding that article I, section 25 of the Hawai'i Constitution, "on its face, does not permit a [jury] vote other than 12-0 to secure a conviction." The circuit court reasoned that "[u]nanimity, or the state of being unanimous, requires the agreement and consent of all involved," and, "[i]n the context of a jury trial, it means all 12 jurors must agree. It does not mean anything less than 12 (such as 10-2 or 9-3)." (Internal quotation marks omitted.) Finally, "[a] 10-2 jury vote," for example, "by definition, is NOT unanimous." The court therefore "decline[d] to read [article I,] section [25,] subsection (2) to authorize the legislature to declare jury unanimity to be anything but 12-0. There is no other reasonable definition of unanimity."

Next, the circuit court addressed Tran's constitutional challenge to HRS § 707-733.6, beginning with the Intermediate Court of Appeals' (ICA) decision in State v. Young, 150 Hawai'i 365, 502 P.3d 45 (App. 2021), an HRS § 707-733.6 case decided after Ramos. The circuit court noted that the ICA concluded in Young that "Ramos did not address the issue presented by [the defendant] in this appeal: whether the juror unanimity requirement extends to deciding which of several possible means the defendant used to commit an element of the crime." Id. at 370, 502 P.3d at 50. The circuit court then

10

concluded that "HRS § 707-733.6(2) does not violate [Tran's] constitutional right to an impartial jury (unanimous verdict) or due process under either the U.S. or Hawai'i Constitutions" and accordingly denied Tran's new trial motion.

The circuit court granted in part and denied in part Tran's dismissal motion, dismissing the case because, "[f]irst, the indictment does not narrowly tailor generic statutory terms," and "[t]he terms 'sexual contact' and 'sexual penetration' are generic terms because they are statutorily defined to mean more than one type of sexual act." "Second, the indictment against Tran also fails to set forth factual details circumscribing the core of criminality in which he allegedly engaged." While "[t]he indictment identifies the who," it does not identify "what specific sexual acts occurred, where they occurred, and how they occurred," the court wrote. Thus, the court concluded, "the indictment fails to ensure that the trial jury did not convict Tran on the basis of a factual theory of guilt that the State did not present to the grand jury or that the grand jury rejected." However, the court dismissed the case without prejudice, instead of with prejudice, "in light of the evidence adduced at trial, the jury's verdict, the seriousness of the offense, and the lack of any statute of limitations."

The State appealed from the circuit court's dismissal order, arguing that the circuit court erred by (1) declining to

apply the Motta/Wells liberal construction standard to Tran's postconviction challenge to the sufficiency of the charge, (2) concluding that "sexual penetration" and "sexual contact" are generic terms as used in HRS § 707-733.6, and (3) requiring that the indictment specify the predicate acts of the charged continuing offense.

Tran cross-appealed, arguing that the circuit court should have dismissed the case with prejudice, rather than without prejudice. Tran also challenged the denial of his new trial motion, raising five points of error: (1) article I, section 25(2) of the Hawai'i Constitution is unconstitutional under the U.S. Constitution in light of Ramos; (2) HRS § 707-733.6(2) is unconstitutional without the safe harbor granted by the aforementioned constitutional provision; (3) because the aforementioned constitutional and statutory provisions are both unconstitutional, the rule requiring juror unanimity as to which specific acts constituted the three acts required, which those provisions overturned, applies to HRS § 707-733.6 cases; (4) Tran's guilty verdict must be set aside; and (5) if Tran is retried, the circuit court must instruct jurors in accordance with the rule requiring unanimity as to the specific acts required to convict under HRS § 707-733.6.

We transferred the case.

12

## II. STANDARDS OF REVIEW

### A. Constitutional Law

"Questions of constitutional law are reviewed de[]novo, under the right/wrong standard."  In re Gas Co., 147 Hawai'i 186, 198, 465 P.3d 633, 645 (2020).

### B. Charge Sufficiency

"The question of whether a charge sets forth all the essential elements of a charged offense is a question of law that this court reviews de novo under the right/wrong standard." Jardine, 151 Hawai'i at 99, 508 P.3d at 1185.

## III. DISCUSSION

The main issue in this case is whether article I, section 25(2) of the Hawai'i Constitution authorizes nonunanimous jury verdicts for HRS § 707-733.6 cases in violation of the Sixth Amendment to the U.S. Constitution as explained in Ramos. Tran argues that jurors in HRS § 707-733.6 cases must unanimously agree about three specific acts prohibited by the statute.  The State argues that Ramos did not disturb laws permitting juries to return guilty verdicts where all jurors agree with the verdict but do not necessarily agree on specific predicate acts.

While Ramos proscribes laws allowing nonunanimous juries to return guilty verdicts, article I, section 25(2) of

the Hawaiʻi Constitution plainly does not empower the legislature to enact such laws, and HRS § 707-733.6(2) plainly does not permit nonunanimous juries to return guilty verdicts.  We therefore conclude that these provisions do not violate the Sixth Amendment to the U.S. Constitution.

Regarding Tran's equal protection claims, because both article I, section 25(2) and HRS § 707-733.6(2) are rationally related to the legitimate legislative end of enhancing public safety, neither provision violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

We also clarify when courts must liberally construe charge challenges and what our recent decision in Jardine requires of indictments charging HRS § 707-733.6 violations when so construed.  Under our precedents, we must liberally construe an indictment challenged after a jury verdict, as was the case here.  When so construed, the indictment against Tran stated an offense because it included all essential elements of the charged crime and relevant statutory definitions, and he did not show he was prejudiced by the charge.  We accordingly conclude that the circuit court incorrectly dismissed the charge against Tran.

We therefore (1) vacate the circuit court's grant in part and denial in part of Tran's dismissal motion, (2) affirm the circuit court's denial of Tran's supplemented new trial

14

motion, and (3) remand the case to the circuit court for further proceedings.

**A.    Article I, Section 25 of the Hawaiʻi Constitution Does Not Violate Tran's Right to a Jury Trial Under the Sixth Amendment to the U.S. Constitution**

Tran argues that, under Ramos, both article I, section 25 of the Hawaiʻi Constitution and HRS § 707-733.6 violate the Sixth Amendment to the U.S. Constitution, as incorporated against the states by the Fourteenth Amendment to the U.S. Constitution.  According to Tran, Ramos "unequivocally held that states may not experiment with unanimity among trial jurors as to the truth of every accusation required to convict in a criminal case."  Tran further argues that the plain language of article I, section 25(2) "expressly authorizes experimentation that Ramos expressly precludes."  We disagree.

Ramos does not reach the issues that Tran claims it does.  Ramos held that the Sixth Amendment proscribes laws allowing nonunanimous juries to return guilty verdicts.  See 140 S. Ct. at 1397.  Thus, Ramos requires all jurors to agree with a given guilty verdict.  However, Ramos is silent regarding what Tran calls "experimentation with . . . unanimity."  Nothing in Ramos suggests that the U.S. Supreme Court sought to prohibit the people of a state from empowering juries to return guilty verdicts where all jurors agree as to guilt but do not necessarily agree on which specific acts that guilt is

15

predicated on.  As a result, Ramos does not support the proposition that the Sixth Amendment invalidates either article I, section 25(2) or HRS § 707-733.6(2).  Further, article I, section 25(2) comports with the Sixth and Fourteenth Amendments because it does not authorize nonunanimous jury verdicts. Because article I, section 25 does not authorize the legislature to empower nonunanimous juries to return guilty verdicts, we need not address Tran's argument that HRS § 707-733.6 violates the Hawai'i Constitution without article I, section 25's authorization.

1.  **The U.S. Supreme Court's decision in Ramos does not proscribe unanimous juries from returning guilty verdicts notwithstanding potential juror disagreement on which specific acts satisfy elements of an offense**

The U.S. Supreme Court determined in Ramos that the right to a jury trial guaranteed by the Sixth Amendment to the U.S. Constitution, as incorporated against the states by the Fourteenth Amendment to the U.S. Constitution, requires juries to return unanimous guilty verdicts to convict defendants of serious crimes.  In so holding, that Court overruled its companion decisions in Apodaca v. Oregon, 406 U.S. 404 (1972), and Johnson v. Louisiana, 406 U.S. 356 (1972), which upheld laws allowing nonunanimous juries to return guilty verdicts in Oregon and Louisiana, respectively.

16

When Ramos was decided, article I, section 11 of the Oregon Constitution expressly permitted convictions by a nonunanimous jury verdict of 10-2, providing in relevant part that "ten members of the jury may render a verdict of guilty or not guilty, save and except a verdict of guilty of first degree murder, which shall be found only by a unanimous verdict, and not otherwise."  Or. Const. art. I, § 11.

Similarly, article I, section 17 of the Louisiana Constitution expressly permitted convictions by nonunanimous juries, stating in relevant part: "[a] case for an offense committed prior to January 1, 2019, in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict."  La. Const. art. I, § 17.(A).

Ramos clarified that "the Sixth Amendment's unanimity requirement applies to state and federal criminal trials equally."  140 S. Ct. at 1397.  Contrary to Tran's claims, however, Ramos contains no language or analysis concerning any Sixth Amendment issue regarding the longstanding practice of permitting a unanimous jury to return a guilty verdict even where jurors might disagree about the specific acts satisfying an element of a crime.  See id.

17

The U.S. Supreme Court has long recognized this practice. In Richardson v. United States, the Court explained the rule as follows:

> The question before us arises because a federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime . . . . Where, for example, an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But that disagreement — a disagreement about means — would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely, that the defendant had threatened force.

526 U.S. 813, 817 (1999) (citations omitted).

The growing body of post-Ramos state and federal case law confirms that Ramos did not disturb the well-established doctrine that the Sixth Amendment to the U.S. Constitution does not require jury unanimity as to specific underlying facts or "means" to convict a defendant of a continuing course of conduct offense, such as that which is at issue here.

Notably, the ICA recently addressed this issue in Young. The defendant in that case argued that HRS § 707-733.6(2) violated the Sixth and Fourteenth Amendments to the U.S. Constitution under Ramos. 150 Hawai'i at 368, 502 P.3d at 48. With reference to article I, section 25's history, HRS § 707-733.6's history, this court's precedent, and U.S. Supreme Court precedent, the ICA concluded that "Ramos did not address the issue presented by [the defendant] in this appeal: whether

18

the juror unanimity requirement extends to deciding which of several possible means the defendant used to commit an element of the crime." Young, 150 Hawai'i at 370, 502 P.3d at 50. That the Young defendant did not advance Tran's argument regarding whether article I, section 25 comports with the U.S. Constitution does not change this analysis because of the two provisions' interrelated histories, discussed infra, Section III(B).

Moreover, as the Young court pointed out, pre-Ramos "courts in other jurisdictions have held that their respective continuous sexual assault statutes do not require jury unanimity on the specific predicate acts." Id. at 376, 502 P.3d at 56. These include courts in Arizona, California, Texas, and Wisconsin. See, e.g., State v. Ramsey, 124 P.3d 756, 764 (Ariz. Ct. App. 2005) (concluding that, under Arizona continuous sexual assault of minor statute, "the specific, individual acts that constitute the requisite number of predicate acts . . . clearly constitute the underlying brute facts or means rather than elements of the crime on which the jury must agree unanimously and separately" (brackets, citation, and quotation omitted)); People v. Gear, 19 Cal. App. 4th 86, 92 (Cal. Ct. App. 1993) (noting that "[t]he crime of continuous sexual abuse of a child . . . is a continuous-course-of-conduct crime and therefore falls within the exception to the rule that jurors

19

must agree on the particular criminal acts committed by the defendant before convicting him," in upholding California continuous sexual assault of minor statute against jury unanimity challenge (citation omitted)); Jacobsen v. State, 325 S.W.3d 733, 737 (Tex. App. 2010) (concluding that, under Texas continuous sexual assault of minor statute, "it is the commission of two or more acts of sexual abuse over the specified time period – that is, the pattern of behavior or the series of acts – that is the actus reus element of the offense as to which the jurors must be unanimous in order to convict."); State v. Johnson, 627 N.W.2d 455, 460 (Wis. 2001) (concluding that, under Wisconsin continuous sexual assault of minor statute, "the predicate acts of sexual assault are not themselves elements of the offense, about which the jury must be unanimous before convicting the defendant. Rather, to convict under this statute, the jury need only unanimously agree that the defendant committed at least three acts of sexual assault of the same child within the specified time period."). Nothing in Ramos changes these holdings.

Federal courts have interpreted Ramos similarly. One federal magistrate judge wrote that

> [t]he [U.S.] Supreme Court has recently held that in state court proceedings for serious crimes, there is a right to have all twelve jurors agree that a defendant is guilty, so that one single vote to acquit renders a guilty verdict unconstitutional. Ramos v. Louisiana, 140 S. Ct. 1390, 1397 (2020). However, the Court has never held that

20

> the jury must also be unanimous as to the means by which a defendant committed the crime, in a case where alternative means are argued to the jury. Indeed, the Court has distinguished between unanimity that [a] defendant committed the crime of conviction (required by Ramos) and unanimity as to how [a] defendant committed the crime (not required by Ramos).

Crow v. Haynes, No. 3:16-cv-05277-RJB-JRC, 2020 WL 5371375, at *18 (W.D. Wash. Aug. 20, 2020), report and recommendation adopted, No. 3:16-cv-05277-RJB-JRC, 2020 WL 5369350 (W.D. Wash. Sept. 8, 2020), aff'd, No. 20-35911, 2021 WL 5122171 (9th Cir. Nov. 4, 2021).

Other federal courts have likewise interpreted Ramos. See Anderson v. Davis, No. 3:19-CV-2915-C-BK, 2021 WL 3040771, at *7 n.3 (N.D. Tex. May 13, 2021) ("Ramos dealt only with the issue of who the unanimity requirement applied to — not what the requirement entailed."), findings, conclusions, and recommendation adopted by 2021 WL 3039015 (N.D. Tex. July 19, 2021), Anderson v. Lumpkin, No. 21-10773, 2022 WL 3134315 (5th Cir. Mar. 30, 2022); Campos-Lopez v. Konieg, No. 8:21-cv-00416, 2021 WL 6805698 at *4 (C.D. Cal Dec. 27, 2021) (noting that, notwithstanding Ramos, "[t]here is . . . no federal constitutional right that a jury decide unanimously which of several possible sets of underlying facts make up a particular element." (ellipsis and quotation omitted)), findings and recommendation accepted by No. 821CV00416ODWSHK, 2022 WL 344970 (C.D. Cal. Feb. 3, 2022); Hernandez v. Dir., No. 4:19CV713, 2022

WL 16753872 at *8 (E.D. Tex. July 13, 2022) (noting that, notwithstanding Ramos, "[a] disagreement about which of several possible sets of underlying brute facts make up a particular element . . . does not matter as long as all 12 jurors unanimously conclude that the Government has proved the necessary related element") (brackets and quotations omitted), report and recommendation adopted by No. 4:19-CV-00713-RWS, 2022 WL 16748597 (E.D. Tex. Nov. 7, 2022), Hernandez v. Lumpkin, No. 22-40782, 2023 WL 8371953 (5th Cir. July 6, 2023) (per curiam).

Tran's contention that Ramos addresses potential juror disagreements regarding predicate acts turns on Ramos's use of the phrase "the truth of every accusation." 140 S. Ct. at 1395 (quotation omitted). However, the full quotation makes clear that the phrase "the truth of every accusation" referred to agreement with a given guilty verdict:

> [t]he requirement of juror unanimity emerged in 14th century England and was soon accepted as a vital right protected by the common law. As Blackstone explained, no person could be found guilty of a serious crime unless the truth of every accusation should be confirmed by the unanimous suffrage of twelve of his equals and neighbors, indifferently chosen, and superior to all suspicion. A verdict, taken from eleven, was no verdict at all.

Id. (quotations, footnotes, and ellipses omitted).

Thus, the phrase "the truth of every accusation" underscores that the Sixth Amendment requires a guilty verdict on which all twelve jurors — rather than fewer than twelve

22

jurors — agree and says nothing about potential juror disagreement as to specific predicate acts.

For the above reasons, we conclude that Ramos does not address guilty verdicts returned by all jurors, notwithstanding potential disagreement as to the means by which a defendant committed an element of a charged continuing offense.

2. **Because article I, section 25(2) of the Hawai'i Constitution does not authorize nonunanimous jury verdicts, it comports with the Sixth and Fourteenth Amendments to the U.S. Constitution**

Tran argues that article I, section 25 of the Hawai'i Constitution authorizes the legislature to empower nonunanimous juries to return guilty verdicts and that it is therefore invalid under the U.S. Constitution.  For the reasons set forth below, we disagree.  Tran further argues that without the "safe harbor" provided by article I, section 25, HRS § 707-733.6 violates the Hawai'i Constitution.  Since we conclude that article I, section 25 does not authorize the legislature to so empower nonunanimous juries and that provision therefore comports with the U.S. Constitution, we need not address Tran's argument that HRS § 707-733 violates the Hawai'i Constitution without article I, section 25's authorization.

Because Tran concedes that article I, section 25 is unambiguous, we construe this provision according to its plain meaning.

23

"[W]e have long recognized that the Hawai'i Constitution must be construed with due regard to the intent of the framers and the people adopting it, and the fundamental principle in interpreting a constitutional provision is to give effect to that intent," and "[t]his intent is to be found in the instrument itself." Hawai'i State AFL-CIO v. Yoshina, 84 Hawai'i 374, 376, 935 P.2d 89, 91 (1997) (quotations omitted). Moreover, "the general rule is that, if the words used in a constitutional provision are clear and unambiguous, they are to be construed as they are written." Id. (brackets, ellipsis, and quotation omitted)). "[T]he words of the [Hawai'i] constitution are presumed to be used in their natural sense unless the context furnishes some ground to control, qualify or enlarge them." Malahoff v. Saito, 111 Hawai'i 168, 181, 140 P.3d 401, 414 (ellipsis and quotation omitted). As with statutes, we "may resort to legal or other well accepted dictionaries as one way to determine the ordinary meaning[s] of certain terms" not otherwise defined. State v. Pacquing, 139 Hawai'i 302, 312, 389 P.3d 897, 907 (2016) (quotation omitted).

Article I, section 25 of the Hawai'i Constitution provides:

> In continuous sexual assault crimes against minors younger than fourteen years of age, the legislature may define:

24

> 1. What behavior constitutes a continuing
>    course of conduct; and
>
> 2. What constitutes the jury <u>unanimity</u> that is
>    required for a conviction.

(Emphasis added.)

Merriam-Webster's Dictionary defines "unanimity" as "the quality or state of being unanimous," and, in turn, defines "unanimous" as "having the agreement and consent of all." <u>Unanimity</u>, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/unanimity [https://perma.cc/8LDV-7Z4V]; <u>Unanimous</u>, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/unanimous [https://perma.cc/4LP9-QGCV].  Thus, for a twelve-member jury to unanimously return a guilty verdict, all twelve members must agree with the verdict, just as the jury did here.  As the circuit court noted in its order denying Tran's supplemented new trial motion, "[i]n the context of a jury trial, [unanimity] means all 12 jurors must agree."  Because "unanimity" means the agreement of all, article I, section 25 of the Hawai'i Constitution is in no way incongruous with <u>Ramos</u>.

Article I, section 25 cannot be read to empower the legislature to authorize juries to return nonunanimous guilty verdicts.  Indeed, the provision forecloses this possibility by using the term "unanimity."  In contrast, article I, section 11 of the Oregon Constitution and article I, section 17 of the

Louisiana Constitution expressly permitted nonunanimous jury verdicts of 10-2.  See Or. Const. art. I, § 11. ("[T]en members of the jury may render a verdict of guilty or not guilty, save and except a verdict of guilty of first degree murder, which shall be found only by a unanimous verdict."); La. Const. art. I, § 17.(A) ("A case for an offense committed prior to January 1, 2019, in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict.").

Because this "constitutional provision is not ambiguous, the court, in construing it, is not at liberty to search for its meaning beyond the instrument."  Malahoff, 111 Hawaiʻi at 181, 140 P.3d at 414 (quotation omitted).  Our inquiry therefore begins and ends with article I, section 25's text, which we may not construe to mean anything other than what it says.

**B.   Neither Article I, Section 25 nor HRS § 707-733.6 Violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution**

Tran argues that article I, section 25 of the Hawaiʻi Constitution and HRS § 707-733.6 violate the Equal Protection Clause of the U.S. Constitution.  Tran argues that those prosecuted under HRS § 707-733.6 are treated differently than those prosecuted under other criminal statutes, and that the difference in treatment is not rationally based.  Specifically,

Tran contends that defendants prosecuted under HRS § 707-733.6 are denied equal access to the rule announced in our decision in State v. Arceo, 84 Hawai'i 1, 928 P.2d 843 (1996), and that because this denial is based on a presumption of guilt, article I, section 25 of the Hawai'i Constitution and HRS § 707-733.6 lack a rational basis.  Because both provisions are rationally based on the legitimate legislative end of enhancing public safety, we disagree.

"The Equal Protection Clause of the Fourteenth Amendment [to the U.S. Constitution] commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985) (quotation omitted).  However, "[t]he Equal Protection Clause does not prohibit the State from passing laws which treat classes of people differently, but only from treating classes differently when the basis of the discrimination does not bear a rational relationship to a legitimate statutory objective."  State v. Bloss, 62 Haw. 147, 153, 613 P.2d 354, 358 (1980).  Because Tran does not claim protected class membership, we review for rational basis.  See Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001) (noting that policy treating classes of people differently "need only be rationally related

to legitimate legislative goals to pass constitutional muster" (quotation omitted)). Doing so here, we hold that both provisions comport with the Fourteenth Amendment's Equal Protection Clause.

In Arceo, a case involving a two-count indictment of child sexual assault, we held that

> when separate and distinct culpable acts are subsumed within a single count charging a sexual assault — any one of which could support a conviction thereunder — and the defendant is ultimately convicted by a jury of the charged offense, the defendant's constitutional right to a unanimous verdict is violated unless one or both of the following occurs: (1) at or before the close of its case-in-chief, the prosecution is required to elect the specific act upon which it is relying to establish the "conduct" element of the charged offense; or (2) the trial court gives the jury a specific unanimity instruction, i.e., an instruction that advises the jury that all twelve of its members must agree that the same underlying criminal act has been proved beyond a reasonable doubt.

Arceo, 84 Hawai'i at 32–33, 928 P.2d at 874–75.

Under Arceo's rule, jurors had to unanimously agree on the specific criminal acts proven at trial when returning guilty verdicts. However, the people of Hawai'i narrowed the Arceo decision when they incorporated article I, section 25 into the Hawai'i Constitution. Because their reasons for doing so are rationally related to a legitimate legislative end, this provision and its companion legislation, HRS § 707-733.6, comport with the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

28

In arguing that article I, section 25 and HRS § 707-733.6 discriminate against defendants prosecuted under HRS § 707-733.6 by denying them the protection of Arceo's rule, Tran cites legislative materials indicating that the provisions would "make it easier to prosecute those who repeatedly sexually assault a child."  See, e.g., S.B. 2246, 23rd Leg., Reg. Sess. (2006) (proposing amendment to article I of Hawaiʻi Constitution relating to sexual assault and noting "[t]his would make it easier to prosecute those who repeatedly sexually assault a child"), https://www.capitol.hawaii.gov/slh/AllIndex/All_Acts_SLH2006.pdf [https://perma.cc/J7SF-3JSX]; S. Stand. Comm. Rep. No. 3010, in 2006 Senate Journal, at 1458 (noting that proposed legislation would "mak[e] it easier to prosecute those who repeatedly sexually assault children"), https://www.capitol.hawaii.gov/journal/senate/2006/Senate_Journal_2006_Committee_Reports.pdf [https://perma.cc/6TLH-7VYL].

While these provisions are not ambiguous, we turn to the relevant legislative history because "an examination of the debates, proceedings and committee reports is useful" in addressing Tran's arguments here.  Nelson v. Hawaiian Homes Comm'n, 127 Hawaiʻi 185, 198, 277 P.3d 279, 292 (2012) (quotation omitted).

Article I, section 25 was enacted "to provide that the legislature may define what behavior constitutes a continuing course of conduct in continuous sexual assault crimes against minors younger than fourteen years of age and what constitutes the jury unanimity that is required for a conviction."  S.B. 2246, 23rd Leg., Reg. Sess. (2006).

A 2006 Senate Standing Committee report regarding the legislation that would become HRS § 707-733.6 noted that,

> [u]nder the current law, it is difficult to prosecute those who repeatedly sexually assault young children, because of the difficulty young children have in remembering the individual dates on which they were sexually assaulted.

S. Stand. Comm. Rep. No. 3010, in 2006 Senate Journal, at 1458.

Enhancing public health, safety, and welfare are recognized as rationally-based legislative ends.  State v. Mallan, 86 Hawai'i 440, 452, 950 P.2d 178, 190 (1998) ("[T]he police power issue is subsumed within the rational basis test. In other words, under minimum rationality due process analysis, a statute must be rationally related to the public health, safety, or welfare.").

This legislative history makes clear that these provisions were intended to protect children from repeated sexual assault, given the unique challenges that child victims might face under these circumstances.  Together, these provisions aim to enhance public safety by permitting unanimous juries to return guilty verdicts in HRS § 707-733.6 cases

30

without requiring agreement on which specific acts were proven beyond a reasonable doubt at trial.  As noted above, one specific reason for permitting juries to return verdicts in this manner was that children have a difficult time "remembering the individual dates on which they were sexually assaulted."  S. Stand. Comm. Rep. No. 3010, in 2006 Senate Journal, at 1458.

These provisions neither authorize nonunanimous juries to return guilty verdicts nor implicate the presumption of innocence, as demonstrated by the record here.  The relevant legislative history reveals an intent to allow unanimous juries to return guilty verdicts in HRS § 707-733.6 cases without necessarily agreeing on which three acts were proven at trial. For example, a Senate Standing Committee report regarding the bill that would become HRS § 707-733.6 stated that the measure would permit juries to return guilty verdicts "if each member of the jury was convinced beyond a reasonable doubt that the defendant had sexually assaulted the child the required minimum number of times, even if there were no unanimity as to the individual assaults."  Id.  The bill was not intended to permit nonunanimous jury verdicts or to alter the presumption of innocence.  Here, Tran was presumed innocent and convicted only after a seven-day trial which concluded with all twelve jurors, who were individually polled at Tran's request, and all answered

"Yes" when the circuit court asked "if [they] agree[d] with the verdict."

Because article I, section 25 of the Hawai'i Constitution and HRS § 707-733.6 are rationally related to the legitimate legislative end of enhancing public safety, neither provision violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

**C. The Indictment was Sufficient**

The Motta/Wells liberal construction rule applies to Tran's indictment challenge because he raised this claim after the jury's verdict. The indictment was sufficient because it charged a crime and Tran was not prejudiced by the allegedly defective charge. We therefore vacate the circuit court's dismissal order.

**1. Tran's defective charge challenge was untimely and the Motta/Wells liberal construction rule applies**

After trial, Tran challenged the charge's sufficiency on the grounds that it did not define the specific acts alleged against him. To comply with Jardine, Tran contends that statutory terms included in indictments "must be narrowed down to the pertinent species from [their] (often capacious) statutory definition[s]." He argues that his indictment defined only the generic terms "sexual penetration" and "sexual contact," but did not state what types of acts he allegedly

32

engaged in. Thus, Tran contends, the indictment was so generalized that it did not state an offense.

Under article I, section 14 of the Hawai'i Constitution, those accused of crimes have the right "to be informed of the nature and cause of the accusation" against them. Defendants may challenge indictments for failure to charge an offense "at any time during the pendency of the proceeding" because of "the significant consequences associated with omitting an essential and material element in an oral charge" or indictment. State v. Sprattling, 99 Hawai'i 312, 318, 55 P.3d 276, 282 (2002) (quotation omitted).

While indictments can be challenged at any point during the proceeding, different standards apply to "post-conviction challenges." Motta, 66 Haw. at 91, 657 P.2d at 1020. Under the Motta/Wells framework, "we will not reverse a conviction based upon a defective indictment unless the defendant can show prejudice or that the indictment cannot within reason be construed to charge a crime." Id. The liberal construction standard "essentially prescribes a presumption of validity on indictments that are challenged subsequent to a conviction." Sprattling, 99 Hawai'i at 318, 55 P.3d at 282.

Tran argues that the Motta/Wells liberal construction standard does not apply here because he challenged the indictment before sentencing. According to Tran, the liberal

construction standard applies only when the challenge is raised even later in the process, i.e., on appeal or in a Hawai'i Rules of Penal Procedure (HRPP) Rule 40 proceeding.  In support of that argument, he cites cases in which we have referred to the Motta/Wells rule as applying when an indictment is challenged for the first time on appeal.  See, e.g., State v. Kauhane, 145 Hawai'i 362, 370, 452 P.3d 359, 367 (2019) ("[W]hen a defendant challenges the sufficiency of a charge for the first time on appeal, an appellate court will apply a more liberal standard of review, called the Motta/Wells rule.").

The State argues that the Motta/Wells rule should apply once there is a finding of guilt.  It points out that this court has consistently applied the Motta/Wells liberal construction rule when charge challenges are raised "for the first time on appeal."  State v. Walker, 126 Hawai'i 475, 491, 273 P.3d 1161, 1177 (2012) (quotation omitted), overruled on other grounds by Schwartz v. State, 136 Hawai'i 258, 361 P.3d 1161 (2015).  The State highlights that this court in Motta adopted the liberal construction rule for indictment challenges raised "after trial."  Motta, 66 Haw. at 94, 657 P.2d at 1022 (emphasis omitted).  Because Tran first challenged the indictment a month after the jury's verdict and the end of trial, the State argues the Motta/Wells rule applies.

34

While we have occasionally described the Motta/Wells rule as applying to challenges raised for the first time on appeal, we have never held that it applies only to challenges raised on appeal. See, e.g., Sprattling, 99 Hawai'i at 318, 55 P.3d at 282 (recognizing Motta/Wells rule "essentially prescribes a presumption of validity on indictments that are challenged subsequent to a conviction").

Motta itself is a good example. The defendant there was convicted of burglary, and subsequently claimed that the indictment was deficient for failing to allege the specific crime that he intended to commit when entering the building. Motta, 66 Haw. at 90, 657 P.2d at 1019. The defendant objected to the indictment by moving to dismiss more than two months after a jury returned a guilty verdict against him. Id. at 90 n.1, 657 P.2d at 1019 n.1. Drawing on federal cases, we adopted a "liberal construction standard for post-conviction challenges to indictments," under which "we will not reverse a conviction based upon a defective indictment unless the defendant can show prejudice or that the indictment cannot within reason be construed to charge a crime." Id. at 91, 657 P.2d at 1020. Applying those principles to the Motta defendant, we rejected his challenge. We wrote that

> [b]y adopting this liberal standard for post-trial challenges, we do not mean to condone or encourage the prosecutors in failing to take greater care expressly to

include all the elements of the offense being charged. Fifteen minutes to an hour more thought and effort spent on the drafting of indictments, would save the prosecutor, as well as our crowded courts, hours of time having to deal with these vexatious challenges to carelessly drawn indictments.

Our adoption of this liberal standard should also put an end to what appears to be a pattern and practice on the part of the criminal defense bar, of waiting until after conviction before raising any objections to indictments.

Id. at 94 n.3, 657 P.2d at 1022 n.3 (emphases omitted).

The circumstances in Motta are analogous to those here, that is, a motion to dismiss made "after trial." Id. at 90, 657 P.2d at 1019. Moreover, the rationale set forth in Motta - disincentivizing the "pattern and practice" of defendants deliberately waiting until after the jury's verdict before moving to dismiss - applies equally here. Id. at 94 n.3, 657 P.2d at 1022 n.3.

Tran argues that the liberal construction rule does not apply until after a defendant has been sentenced and a court has entered a final judgment. See, e.g., State v. Wheeler, 121 Hawai'i 383, 400, 219 P.3d 1170, 1187 (2009) (observing that Motta/Wells rule applies when defendants challenge charges "subsequent to a conviction"). However, these cases have not excluded the possibility of applying the rule to challenges raised post-verdict, but prior to sentencing. As we noted in State v. Akana, "[t]he meaning of the term 'convicted' or 'conviction' varies according to the context in which it appears and the purpose to which it relates." 68 Haw. 164, 166, 706

P.2d 1300, 1303 (1985). While the "technical definition [of 'conviction'] includes the judgment or sentence rendered pursuant to an ascertainment of guilt," the term is "more commonly used and understood to mean a verdict of guilty or a plea of guilty." Id. Tran was convicted when the circuit court "adjudge[d] Mr. Tran guilty" immediately after receiving the jury's unanimous verdict.

Further, the rationale we cited in Motta applies with equal force whether the motion is made after a guilty verdict or after a final judgment of conviction is entered. Cf. State v. Bautista, 153 Hawai'i 284, 289, 535 P.3d 1029, 1034 (2023) ("[D]efendants awaiting sentencing, or those challenging a charging instrument's validity for the first time on appeal . . . or even later per HRPP Rule 40, are foreclosed from having their pleas nullified or their trial convictions overturned per HRS § 801-1 [2014].").

We therefore hold that where, as here, a charge challenge is raised after a guilty verdict has been returned (or after a court has adjudicated a defendant guilty in a bench trial), the Motta/Wells rule applies.

2. **Under the Motta/Wells rule, the indictment was not defective because Tran was not prejudiced and the charge stated a crime**

Applying the liberal construction rule, we conclude that the circuit court incorrectly dismissed the indictment.

37

Tran argues that his case is similar to Jardine, in which this court held that the indictment against the defendant in that case was insufficient because it tracked the generic statutory language of second-degree assault, but did not include the specific details about the type of assault that the defendant allegedly committed. 151 Hawai'i at 97-98, 508 P.3d at 1183-84. In Jardine, we stated that when strictly construing an indictment containing generic language, a charge should "descend to the particulars" because including "such information would apprise a defendant of what the defendant must be prepared to meet." Id. at 101-02, 508 P.3d at 1187-88. But in Jardine the defendant filed a motion to dismiss before trial, and the Motta/Wells liberal construction rule therefore did not apply. Id. at 98, 508 P.3d at 1184.

Here, Tran has not established that he was prejudiced by the indictment. There is nothing in the record to suggest that he was misled or would have defended the case differently if the indictment contained the additional detail he proposes. Thus, we are not convinced that he was prejudiced by the indictment at hand. Cf. Motta, 66 Haw. at 94, 657 P.2d at 1022 (upholding defendant's conviction of burglary even where indictment failed to include crime that was allegedly committed when defendant entered building because he had "shown no

prejudice in the outcome of his trial from the failure of the indictment to specify the underlying offense").

Second, when liberally construed, the indictment was sufficiently detailed to charge a crime. The indictment alleged in relevant part that

> [o]n or about January 1, 2015 to and including January 31, 2020, in the City and County of Honolulu, State of Hawaiʻi, ALVIN TRAN, a person who either resided in the same home with [minor child], a minor under the age of fourteen years, or had recurring access to [minor child], with intent or knowledge that [minor child] was such a person, did intentionally or knowingly engage in three or more acts of sexual penetration and/or sexual contact with [minor child] over a period of time, while [minor child] was under the age of fourteen years, and was not married to [minor child], and knew he was not married to [minor child], thereby committing the offense of Continuous Sexual Assault of a Minor Under the Age of Fourteen Years, in violation of Section 707-733.6 of [HRS].

The indictment included all material elements outlined in HRS § 707-733.6, citing that statute specifically. It also provided the statutory definitions of "sexual penetration," "sexual contact," and related terms.

Generally, "[w]here [a] statute sets forth with reasonable clarity all essential elements of the crime intended to be punished, and fully defines the offense in unmistakable terms readily comprehensible to persons of common understanding, a charge drawn in the language of the statute is sufficient." State v. Jendrusch, 58 Haw. 279, 282, 567 P.2d 1242, 1245 (1977). Tran argues that because the indictment only included the statutory language of HRS §§ 707-733.6 (Continuous Sexual

Assault of a Minor Under the Age of Fourteen Years) and 707-700 ("sexual penetration," "deviate sexual intercourse," and "sexual contact"), it was too generic to state a crime.

We do not agree that the indictment cannot, "within reason," be construed to state an offense.  See Motta, 66 Haw. at 91, 657 P.2d at 1020.  As the State points out, when reviewing "whether an offense has been sufficiently pleaded," this court "interpret[s] a charge as a whole, employing practical considerations and common sense."  Sprattling, 99 Hawai'i at 318-19, 55 P.3d at 282-83.

Here, the indictment included the material elements of the offense and all the relevant statutory definitions.  A person of common understanding would know from reading the indictment against Tran that he was accused of violating HRS § 707-733.6 by intentionally or knowingly engaging in (1) three or more acts of sexual penetration and/or sexual contact (2) with minor child, to whom he was not married (3) between 2015-2020 (4) in the City and County of Honolulu.  The indictment outlined the requisite mens rea and properly defined sexual penetration and sexual contact according to their statutory definitions.  See Wheeler, 121 Hawai'i at 393, 219 P.3d at 1180 ("[W]here the statute sets forth with reasonable clarity all essential elements of the crime intended to be punished, and fully defines the offense in unmistakable terms readily

40

comprehensible to persons of common understanding, a charge drawn in the language of the statute [will be] sufficient."). Therefore, the indictment charged a crime when liberally construed. See id.

Tran argues further that "[e]lisions of necessary information to establish the crime of conviction precludes reasonably construing the charge to state an offense." He asserts that the indictment should have included the specific types of sexual penetration or contact that he allegedly engaged in. Again, he analogizes to Jardine, where we upheld the dismissal of a second-degree assault indictment that neither defined "substantial bodily injury" nor specified the type of injury that the defendant allegedly inflicted. 151 Hawai'i at 98, 508 P.3d at 1184. But, again, Jardine involved a pretrial motion to dismiss, and we did not consider the adequacy of the charge in light of the liberal construction standard. Id. at 101-02, 508 P.3d at 1187-88.

A more apt analogy would be to Motta, where the defendant challenged a burglary indictment on the grounds that it did not specify the crime that the defendant intended to commit when he entered the building. 66 Haw. at 92, 657 P.2d at 1021. We noted there that, while the "general rule" in certain other jurisdictions was that such an indictment would be defective, under the liberal construction standard, we were,

"within reason," able to construe the charge as stating the offense of burglary.  Id. at 93-94, 657 P.2d at 1021-22.  In Motta, the defendant did not show that the indictment against him was "so obviously defective that by no reasonable construction can it be said to charge the offense for which conviction was had."  Id. at 94, 657 P.2d at 1022 (quotation marks omitted).

Similarly, the charge here can be construed as alleging the offense charged "within reason."  See Motta, 66 Haw. at 91, 657 P.2d at 1020.  All of HRS § 707-733.6's essential elements and relevant statutory definitions were included in the indictment.  The indictment therefore "sufficiently apprise[d]" Tran of what he needed to "be prepared to meet,"  Wells, 78 Hawai'i at 379-80, 894 P.2d at 76-77, and "provided [him] with fair notice of the offense's essential elements," Kauhane, 145 Hawai'i at 370, 452 P.3d at 367 (brackets and quotation omitted).

Because the indictment must be liberally construed, and, when so construed, was sufficient to apprise Tran of what he had to prepare to meet at trial, the circuit court incorrectly dismissed the indictment.  The circuit court's dismissal order is therefore vacated.  Because we conclude that the circuit court incorrectly dismissed the indictment, we do

42

not address whether it should have been dismissed with prejudice.

## IV.  CONCLUSION

For the foregoing reasons, we (1) vacate the circuit court's January 9, 2023 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss; (2) affirm the circuit court's October 6, 2022 Order Denying Defendant's Motion for New Trial, Pursuant to Supplemental Argument, Filed May 25, 2022; and (3) remand the case to the circuit court for further proceedings consistent with this opinion.

| | |
|---|---|
| Daniel Hugo<br>for Plaintiff-Appellant/<br>Cross-Appellee | /s/ Mark E. Recktenwald<br><br>/s/ Sabrina S. McKenna |
| Thomas M. Otake<br>for Defendant-Appellee/<br>Cross-Appellant | /s/ Todd W. Eddins<br><br>/s/ Clarissa Y. Malinao |
| Robert T. Nakatsuji<br>(on the briefs)<br>for Amicus Curiae | |